CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
MAY 1 3 2005
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:04CR00025 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| HAROLD LAMONT FLETCHER, | ) | |
| | ) | |
| Defendant, | ) | By:   B. WAUGH CRIGLER |
| | ) |         U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count Indictment charging defendant in Count One with knowingly conspiring to distribute, and to possess with intent to distribute, 50 grams or more, of a mixture or substance containing a detectable amount of cocaine base, also called "crack," a Schedule II narcotic controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 846. With respect to Count One, the Grand Jury also made a special finding, pursuant to United States Sentencing Guidelines § 1B1.3(a)(1)(B), that it was reasonably foreseeable to the defendant that members of this jointly undertaken criminal conspiracy distributed or possessed with intent to distribute more than 1.5 kilograms of mixtures and substances containing detectable amounts of cocaine base, also called "crack," in and between December 2002 and December 2004. In addition, the Grand Jury made a special finding, pursuant to USSG § 2D1.1(b)(1), that the defendant possessed firearms, aided and abetted another defendant in possessing firearms, or was otherwise

responsible for the firearms possession by another defendant as a reasonably foreseeable consequence of the conspiracy. On May 6, 2005, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Count One of the Indictment pursuant to a plea agreement between defendant and the government.

At this hearing the defendant was placed under oath and testified that his full legal name is Harold Lamont Fletcher, that he was born on April 3, 1974, and that he received his GED. The defendant stated that he can read, write, and understand the English language. The defendant stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. Defendant stated that he was subject to no other physical or mental condition that impaired his ability to understand the nature of the proceedings being held. Defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to these offense.

The defendant testified that he had received a copy of the Indictment pending against him and that he had fully discussed the charges therein, and his case in general, with his counsel. He also testified that he had read the plea agreement in its entirety and had discussed the plea agreement with his counsel before signing the agreement. He stated that he understood the terms of the agreement and that the document presented to the court set forth his agreement with the government in its entirety. The defendant specifically testified that he understood that under the terms of the agreement he was waiving any right to appeal or to collaterally attack his conviction or sentence and that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in Count One, including any facts related to sentencing.

The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offense charged. The defendant also stated that no one had made any promises other than those contained in his agreement with the government, or made any assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the offense with which he is charged are felonies and that, if his plea is accepted, he will be adjudged guilty of such offense. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $100, and that, at the discretion of the court, he may also be denied federal benefits, as that term is defined in 21 U.S.C. § 862, for a period of years or indefinitely, as set forth in the plea agreement. The defendant stated that he consented to the administrative forfeiture, official use and/or destruction of any illegal firearms or illegal contraband seized by any law enforcement agency from his possession or from his direct or indirect control. The defendant stated that he understood that he must submit to the government a complete and truthful financial statement revealing all his assets and liabilities on a form provided by the government within 30 days of the date of the plea agreement. The defendant testified that he was waiving his right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of his case.

The defendant was informed that the maximum possible penalty provided by law for the offense with which he is charged is, in the case of Count One, life imprisonment and a $4 million fine, together with supervised release. The defendant also was informed that the mandatory minimum sentence for Count One is ten years in prison, together with supervised release. The

defendant was informed under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 2005 WL 50108 (U.S. Jan. 12, 2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have an opportunity to challenge the reported facts and the application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney has given him and that the court has the authority to issue a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offense to which the defendant is pleading guilty.

The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a) for acceptance of responsibility and a one-level (1) reduction pursuant to USSG § 3E1.1(b) if his offense level is 16 or greater. The defendant also stated that he understood that the government is under no obligation to file a motion for substantial assistance, but that to the extent the government does exercise such discretion in this regard, he must provide such assistance in a manner set forth in the plea agreement. The defendant further stated that he understood that the government would

recommend that his sentence of incarceration be fixed between the low end and middle of the applicable sentencing guideline range, but that the court would not be bound by the government's recommendation. The defendant stated that he knew that parole had been abolished and that if he is sentenced to prison he will not be released on parole but on supervised release, a violation of which could result in additional incarceration.

The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses; and
6. The right to decline to testify unless he voluntarily elected to do so in her own defense;
7. The right to a unanimous guilty verdict;
8. The right to appeal a guilty verdict.

The defendant also testified that he understood that if he is adjudged guilty of these charges, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. The defendant further stated that he agreed that his counsel's representation had been effective. The defendant testified that he understood the possible consequences of his plea and the consequences of breaching any term of the plea agreement. The defendant asked the court to accept his plea of guilty to Count One of the Indictment.

## THE GOVERNMENT'S EVIDENCE

The defendant waived his right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

The defendant, Harold Fletcher, was as a powder and "crack" cocaine dealer from Warren County, Virginia. The following information pertaining to the defendant's distribution of "crack" cocaine was obtained via interviews, LE observations and proffers:

Brandi Knight stated in an interview that she observed the defendant, AKA "Chubby," with approximately ¾ ounce of powder cocaine.

Derek Lucie stated in an interview that during the end of 2002 until May 2003, Jordan occasionally received powder cocaine from the defendant. Lucie also purchased cocaine from the defendant approximately four times, obtaining ¼ ounce of powder cocaine (fish scale) for $350.

Chance Whittington stated in an interview that Jordan also supplied cocaine to Jennifer Kenny, Derek Lucie, Mario Garcia Holguin a.k.a."Mario", Brian Young, Steve Siksay, Jennifer McClellan, and the defendant. Whittington stated that he was unaware of there arrangements with Jordan but was aware that all distributed cocaine in Front Royal, Virginia.

Jennifer McClellan stated in an interview that Jordan distributed "crack" cocaine from the defendant's residence in Front Royal, Virginia.

Robert Nickens stated in a proffer that he was aware that the defendant sold powder cocaine and "crack" cocaine in Front Royal, Virginia since approximately 2001.

Wayne Price stated in a proffer that he supplied the defendant cocaine for approximately 6 months from 2003 until 2004. During that time, the defendant sold two to three ounces of powder cocaine a week supplied by Price.

Randall Freeman stated in an interview that he had been dealing with the defendant since approximately 1998. Freeman stated that he purchased one-eighth ounce of powder cocaine from the defendant every other day until he was incarcerated on January 15, 2004. Freeman said that the defendant was closely associated with Waverly Jordan and the two would often keep each other supplied with drugs.

Freeman further stated that the defendant owns at least one firearm and usually keeps the gun accessible. Freeman advised that the defendant occasionally carries the firearm with him. Freeman advised that he has seen the defendant sell cocaine to other individuals on approximately 50 occasions.

Natasha Markle stated in a proffer that she first met the defendant through Waverly Jordan. During those occasions, Markle stated, the defendant would lay out lines of cocaine for Markle. Waverly Jordan stated in a proffer that he has supplied and received cocaine from the defendant on numerous occasions. In addition, Jordan stated that he has observed the defendant distribute "crack" cocaine on approximately 50 occasions.

On January 6, 2005, upon his arrest, the defendant was found to be in possession of cocaine, "crack" cocaine and three firearms.

## PROPOSED FINDINGS OF FACT

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed

    plea;

2. The defendant is aware of the nature of the charges and the consequences

    of his plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Count

    One of the Indictment; and

4. The evidence presents an independent basis in fact containing each of the

    essential elements of the offense to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that this court accept the defendant's plea of guilty to Count One of the Indictment and adjudge him guilty of that offense. The undersigned further DIRECTS that a presentence report be prepared and RECOMMENDS that the presiding District Judge defer acceptance of the plea agreement until after that report has been submitted to the Court. A sentencing hearing hereby is scheduled for July 8, 2005 at 2:30 p.m. before the presiding District Judge in Harrisonburg.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

Date 5/13/05